UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------------ x
:
**DC SOCCER, LLC** :
  100 Potomac Ave., SW :
  Washington, DC 20024; and : **COMPLAINT**
:
**DC STADIUM LLC** : No. 1:19-cv-3163
  100 Potomac Ave., SW :
  Washington, DC 20024**,** :
:
                     **Plaintiffs,** :
        v. :
:
**CAPX OFFICE SOLUTIONS, LLC** :
  6700A Rockledge Drive, Suite #330, :
  Bethesda, Maryland 20817; :
:
**CAPX SOLUTIONS, LLC** :
  6700A Rockledge Drive, Suite #330, :
  Bethesda, Maryland 20817; and :
:
**JOHN VASSOS** :
  7111 Longwood Drive :
  Bethesda, Maryland 20817**,** :
:
                     **Defendants.** :
------------------------------------------------------------------------ x

Plaintiffs DC Soccer, LLC ("DC Soccer") and DC Stadium LLC ("DC Stadium," and, together with DC Soccer, "D.C. United" or the "Plaintiffs"), by way of their Complaint against Defendants CapX Office Solutions, LLC ("CapX Office"), CapX Solutions, LLC ("CapX Solutions," and, together with CapX Office, "CapX") and John Vassos ("Vassos," and together with CapX, the "Defendants"), state as follows:

## PRELIMINARY STATEMENT

1.    This action concerns Defendants' failure to live up to their promises as business partners of D.C. United. Plaintiffs collectively operate D.C. United, a professional soccer club in

1

Major League Soccer ("MLS"), and Audi Field, the newly-constructed stadium in which D.C. United plays. Defendants signed agreements to be valued partners of D.C. United, including a sponsorship agreement and a suite lease. Defendants have failed to make the payments required by those agreements. Additionally, Defendants, which purportedly operate an office furniture and equipment supply firm, caused Plaintiffs additional damage through duplicate billing and other wrongful acts concerning the construction of D.C. United's office space and leases of copiers and furniture. Plaintiffs are entitled to be compensated for the damages caused by Defendants.

## THE PARTIES

2. DC Soccer is a Delaware limited liability company. It is also one of the most successful teams in MLS, the premier American soccer league, having won the MLS Cup on four occasions.

3. DC Stadium is a Delaware limited liability company. It is party to a July 2, 2015 ground lease with the District of Columbia through which it operates Audi Field.

4. CapX Office is a Maryland limited liability company with its principal place of business at 6700A Rockledge Drive, Suite #330, Bethesda, Maryland 20817.

5. CapX Solutions is a Maryland limited liability company with its principal place of business at 6700A Rockledge Drive, Suite #330, Bethesda, Maryland 20817. Upon information and belief, CapX Office and CapX Solutions are intended to be different entities reflecting different business lines of the collective CapX enterprise.

6. Vassos is an individual residing at 7111 Longwood Drive, Bethesda, Maryland 20817. Vassos is the President of CapX.

## JURISDICTION

7. The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) as this is a civil

action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. There is complete diversity of citizenship between Plaintiffs and Defendants.

8. The Court has personal jurisdiction over Defendants as they regularly do business in the District of Columbia, and because the conduct at issue in this action arises out of Defendants' business transactions in the District of Columbia.

9. Venue is appropriate in this forum pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### A. CapX Defaults on the Sponsorship Agreement

10. Effective April 4, 2018, DC Soccer and CapX entered into a Local Sponsor Agreement (the "Sponsorship Agreement") whereby CapX became an official partner of D.C. United. A true and correct copy of the Sponsorship Agreement is attached hereto as **Exhibit (1)**.

11. As part of the Sponsorship Agreement, CapX received, among other benefits, the right to:

   a. identify itself as an official sponsor of D.C. United;

   b. use D.C. United logos, marks and other intellectual property;

   c. activate the sponsorship at D.C. United matches;

   d. have advertisements displayed within Audi Field;

   e. host events at Audi Field;

   f. have CapX logos, marks and other intellectual property incorporated into D.C. United communications, promotions and social media posts; and,

   g. be identified as a D.C. United sponsor on D.C. United's webpage and television broadcast.

12. In exchange for the above-listed benefits, CapX agreed to pay DC Soccer a total of $560,000.00 in the following amounts in the following years:

        a. 2018: $50,000.00

        b. 2019: $90,000.00

        c. 2020: $115,000.00

        d. 2021: $140,000.00

        e. 2022: $165,000.00

13. On or about August 15, 2018, the parties amended the Sponsorship Agreement (the "<u>Addendum</u>"). A true and correct copy of the Addendum is attached hereto as **Exhibit (2)**.

14. The Addendum provided CapX with the right to additional advertising and sponsorship activation with D.C. United and at Audi Field. In exchange, CapX agreed to make increased sponsorship payments as follows:

        a. 2018: $135,000.00

        b. 2019: $175,000.00

        c. 2020: $200,000.00

        d. 2021: $225,000.00

        e. 2022: $250,000.00

15. In total, the Addendum increased CapX's financial obligations by $85,000 per year, or $425,000.00 over the term of the Sponsorship Agreement.

16. While CapX made the required 2018 payment on the Sponsorship Agreement, CapX has failed to make any payment for 2019 and beyond.

17. CapX owes D.C. United a total of $850,000.00 on the Sponsorship Agreement.

### B. D.C. United Performs its Obligations under the Sponsorship Agreement

18. In addition to permitting CapX to use D.C. United logos and marks and to be identified as a D.C. United partner, D.C. United provided CapX with substantial sponsorship benefits during the 2019 season, including but not limited to:

    a. Approximately 51 minutes of signage on Audi Field's goal wall LED board;

    b. Approximately 98 minutes of signage on Audi Field televisions;

    c. Permanent signage within Audi Field; and,

    d. An advertisement on D.C. United's webpage.

### C. CapX Defaults on the Suite Lease

19. As part of the Sponsorship Agreement, CapX entered into an Audi Field Suite Lease Agreement (the "Suite Lease") whereby CapX agreed to rent a luxury suite for all D.C. United matches at Audi Field. *See* **Exhibit (1)** (Sponsorship Agr., Ex. C).

20. CapX took advantage of the Suite Lease by attending many D.C. United games during the 2018 and 2019 seasons.

21. The annual fee for the Suite Lease was $85,000.00 per year from 2018 through 2022.

22. While CapX made the required 2018 payment on the Suite Lease, CapX has only made one of its 2019 payments.

23. CapX owes D.C. United a total of $318,750.00 on the Suite Lease.

### D. CapX Double Bills DC Stadium on the Furniture Lease and Office Construction

24. By agreement dated August 28, 2019, DC Stadium agreed to lease office furniture from CapX for a monthly payment of $9,127.15 for 60 months, for a total of $547,629 (the "Furniture Lease"). A true and correct copy of the Furniture Lease is attached hereto as **Exhibit**

**(3)**. DC Stadium also agreed to pay CapX $51,792.50 for the delivery and installation of the office furniture.

25. By invoice dated September 14, 2018 (Invoice #1348), CapX invoiced DC Stadium $60,919.65 for the first payment of the Furniture Lease and the related delivery and installation.

26. By invoice also dated September 14, 2018 (Invoice #1349), CapX invoiced DC Stadium for $14,115.65 for additional office furniture and installation.

27. By invoice dated October 15, 2018 (Invoice #1393), CapX invoiced DC Stadium for $18,254.30 for the October and November payments of the Furniture Lease.

28. By invoice also dated October 15, 2018 (Invoice #1394), CapX invoiced DC Stadium for $16,894.08 related to electrical work CapX performed at D.C. United's offices.

29. On November 6, 2018, DC Stadium paid Invoice ##1348 and 1349 through a draw on a loan related to the construction of Audi Field (the "November Draw").

30. Despite having been paid by DC Stadium on Invoices ##1348 and 1349, CapX harassed D.C. United for payment on the invoices, insisting that they had not been paid in multiple emails and telephone calls. CapX also insisted on immediate payment of Invoices ##1393 and 1394.

31. CapX made these requests to Greg Burie, D.C. United's Vice President of Finance. Notably, Burie only joined D.C. United a few weeks earlier in early October 2018, and he was not involved in the November Draw. Moreover, D.C. United had been without any financial professionals for weeks prior to Burie's having been hired, resulting in an unfortunately confused state of affairs concerning payment of invoices at that time.

32.     In response to CapX's repeated and erroneous demands for payment, on November 29, 2018, Burie facilitated wire payments to CapX for Invoices ##1348, 1349, 1393, and 1394 (collectively, the "Office Invoices"), thus duplicating payment on Invoices ##1348 and 1349.

33.     Around the same time, Burie arranged for Invoices ## 1393 and 1394 to be paid through the construction loan draw. Indeed, on December 17, 2018, Invoices #1393 and 1394 were paid a second time.

34.     Consequently, through their harassment of D.C. United's new and overwhelmed employee, CapX was overpaid by $110,183.68.

E.     **CapX's Wrongdoing Concerning the Copiers**

35.     On July 12, 2018, DC Stadium and CapX entered into an agreement whereby DC Stadium leased five copy machines from CapX (the "First Copier Lease"). A true and correct copy of the First Copier Lease is attached hereto as **Exhibit (4)**. The First Copier Lease required DC Stadium to make 60 monthly payments of $6,298.41, for a total of $377,904.60.

36.     The First Copier lease identified the five copy machines as follows:

   a. One (1) Kyocera TA8052ci copier;

   b. One (1) Kyocera TA7052ci copier;

   c. Two (2) Kyocera TA406ci copiers; and

   d. One (1) additional "Color Unit."

37.     On July 13, 2018, the day after the execution of the First Copier Lease, CapX assigned its rights for the first 18 monthly payments under the First Copier Lease to Noreast Capital Corporation ("Noreast").

38.     Next, in exchange for entering into the Addendum to the Sponsorship Agreement, CapX requested DC Stadium to enter into an additional copy machine lease.

39. Consequently, on September 11, 2018, DC Stadium entered into a lease agreement with Marlin Leasing Corporation ("Marlin") whereby DC Stadium leased five copy machines from Marlin (the "Second Copier Lease," and with the First Copier Lease, the "Copier Leases"). A true and correct copy of the Second Copier Lease is attached hereto as **Exhibit (5)**. The Second Copier Lease required DC Stadium to make 60 monthly payments of $5,895.00, for a total of $353,700.00.

40. Notably, the annual cost of the Second Copier Lease ($70,740.00) was roughly equivalent to the increase in CapX's annual financial obligations as result of the Addendum ($85,000.00).

41. This was not a coincidence – it was the parties' intention that the amount CapX spent with D.C. United roughly equaled the amount D.C. United spent with CapX. Based on CapX's representations, it was D.C. United's understanding that Marlin would be compensating CapX for amounts received under the Second Copier Lease or that there was some equivalent financial relationship between the parties.

42. The Second Copier lease also identified the five copy machines as follows:

   a. One (1) Kyocera TA8052ci copier;

   b. One (1) Kyocera TA7052ci copier; and,

   c. Three (3) Kyocera TA406ci copiers.

43. In fact, the Second Copier Lease was for *the exact same copiers* covered by the First Copier Lease. Indeed, CapX represented to D.C. United that the Second Copier Lease superseded the First Copier Lease.

44. CapX's representation proved to be false, and DC Stadium was forced to make payments on both the First Copier Lease (to Noreast) and the Second Copier Lease (to Marlin), even though the Copier Leases were for *the same five copiers*.

45. Between July 2018 and June 2019, DC Stadium was invoiced for and paid Noreast $74,096 on the First Copier Lease. During the same period of time, DC Stadium was invoiced and paid Marlin $58,188 on the Second Copier Lease.

46. After being confronted with this information in July 2019, CapX arranged for the release of the First Copier Lease with Noreast. Consequently, as of July 2019, DC Stadium is only paying the Second Copier Lease. Nevertheless, DC Stadium has already been damaged by the $58,188 in duplicate payments for the same five copiers.

F. **CapX Admits Liability**

47. In the spring of 2019, and extending into the summer, D.C. United informed CapX that it was in default on its obligations under the Sponsorship Agreement and the Suite Lease. D.C. United also demanded repayment for the Office Invoices and the duplicate payments made on the Second Copier Lease.

48. In a June 19, 2019 email, Blake Esherick ("Esherick"), the then-Chief Operating Officer of CapX, told Burie, "Please send the most recent Marlin invoice to me. You should just pay Noreast moving forward."

49. Burie responded by providing CapX with the dates and amounts of payments made by DC Stadium to Marlin pursuant to the Second Copier Lease, which, at that time, totaled $51,001.91.

50. Esherick, on behalf of CapX, replied by admitting CapX's liability for the Second Copier Lease: "You should be paying the Noreast invoices. We will reimburse DC United for the above referenced payments already paid to Marlin and CapX will make sure that the Marlin lease is satisfied."

51.     On July 2, 2019, Christopher Deubert, D.C. United's General Counsel, had a telephone call with Esherick concerning CapX's outstanding obligations. Immediately following the call, Deubert sent an email to Esherick (copying Vassos) confirming the substance of the call as follows:

1.  By the end of next week, CapX will make a payment of $50,000.

2.  By the end of next week, CapX will also make a payment to cover the amounts we have been billed in duplicate for the copier leases. By our calculations, this amount is currently $46,734.17.

3.  You have told us that we should no longer pay the Noreast invoices, which you admitted contradicted your earlier direction to not pay Marlin. Either way, we will need written documentation from either Noreast or Marlin understanding that we will no longer be making payment to them.

4.  You indicated you were not involved in the process by which our leases were assigned or otherwise transferred to Noreast and Marlin. As I indicated, we are skeptical and unsure of how it is that CapX appears to have assigned our same lease twice.

5.  You confirmed that CapX is currently having cash flow issues resulting in the delayed payments.

52.     After CapX did not make the promised $50,000.00 payment, D.C. United learned that Esherick had resigned from CapX.

53.     On July 11, 2019 Vassos responded to the above-referenced email chain by promising to have D.C. United fully paid "by the end of Aug. 2019."

54.     In the same email, Vassos again admitted CapX's liability concerning the Copier Leases:

> I understand there was a billing issue that had to do with CapX originally holding the copier equipment lease and then having Marlin bill it as well. What I believe actually happened is that this lease was supposed to have been closed out . . . . I believe that we owe you for duplicate payments made on the copier leases to both CapX Financial/Noreast and Marlin thru July 2019. Please, moving forward do not make any further payments on [the First Copier Lease]. We will be shutting that lease off. You should pay Marlin for the equipment lease moving forward.

55. Deubert and Vassos spoke by phone later that day on July 11, 2019 during which Vassos admitted that CapX owed D.C. United for the Sponsorship Agreement, the Suite Lease the Office Invoices and the Copier Leases. The next morning, on July 12, 2019, Deubert summarized their conversation in an email to Vassos, including the below relevant parts:

> You also informed me that you were not previously aware of the full amounts owed by CapX to D.C. United. Those amounts are as follows:
>
> 1. Duplicated payments related to Stadium build-out:   $110,183.68
> 2. Past due amounts on suite and sponsorship:   $131,250.00
> 3. Duplicated copier lease payments:   $53,410.48
>    **Total:**   **$294,844.16**
>
> We can provide backup and clarity on these numbers as needed. You promised to make D.C. United whole on these outstanding obligations by the end of August. Next week we will construct a proposed payment schedule to effectuate that.

56. After Vassos did not respond to Deubert's email and subsequent follow ups, Deubert and Vassos spoke by telephone on August 1, 2019. In that telephone call, Vassos told Deubert that CapX and/or Vassos would soon be receiving funds for which it would make a substantial payment to D.C. United.

57. In the August 1, 2019 telephone call, Vassos also told Deubert that D.C. United would soon receive paperwork from Noreast to effectuate the satisfaction and termination of the First Copier Lease.

### G. Vassos Is Personally Liable for CapX's Wrongdoing

58. Vassos has repeatedly represented to D.C. United that he has a terminal illness. While D.C. United does not dispute the existence of and has sympathy for Vassos' illness, Vassos should nonetheless be held personally liable for the damages owed by CapX in this matter.

59. In his July 11, 2019 email, Vassos told D.C. United that he had "made arrangements

11

to dip into some financial resources to get you guys completely paid to date by the end of Aug. 2019."

60. Vassos' vague reference to "financial resources" made more sense two weeks later. On July 26, 2019, Vassos forwarded to D.C. United an email chain between Vassos and NFP, an insurance broker. In the email, NFP representatives (with Vassos copied) are discussing when Vassos would be eligible to receive accelerated death benefit payments from Vassos' life insurance policy.

61. Upon information and belief, Vassos forwarded the email to D.C. United because it was his intention to pay the amounts owed by CapX to D.C. United with the proceeds from Vassos' life insurance policy.

62. Vassos' apparent intention to pay off the liabilities of CapX with his personal money demonstrates the commingling of funds between Vassos and CapX, insufficient capitalization on the part of CapX, and a disregard for CapX's corporate formalities. For these reasons, the corporate veil must be pierced and Vassos held personally liable for CapX's liabilities.

H. **D.C. United Puts CapX on Notice and Demands Repayment**

63. By letter dated September 25, 2019, D.C. United advised CapX that it had failed to make the payments required by the Sponsorship Agreement and the Suite Lease and demanded payment within the applicable cure periods (the "September 25 Letter"). In that same letter, D.C. United demanded repayment related to the Office Invoices and Copier Leases. A true and correct copy of the September 25 Letter is attached hereto as **Exhibit (6)**.

64. CapX did not respond to the September 25 Letter.

65. On October 11, 2019, pursuant to the terms of the Sponsorship Agreement and Suite Lease, D.C. United terminated the Sponsorship Agreement and Suite Lease as a result of CapX's

defaults (the "Termination Notice").

66. In response to the Termination Notice, on October 11, 2019, Vassos sent Deubert an e-mail in which Vassos stated: "Without question, we [CapX] owe you [D.C. United] the money outlined in your previous letters and need to start getting you paid."

67. To date, D.C. United has not received the additional payments Vassos and CapX promised it under the Sponsorship Agreement, the Suite Lease, or as reimbursement for the duplicate billing of office invoices and copiers.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract – the Sponsorship Agreement)

68. D.C. United repeats and realleges the allegations set forth above as if fully set forth herein.

69. The Sponsorship Agreement is a valid and binding contract.

70. D.C. United at all times performed its obligations under the Sponsorship Agreement.

71. CapX breached the Sponsorship Agreement by not paying the amounts owed under the Sponsorship Agreement, totaling $850,000.00.

72. As a direct and proximate cause of CapX's breach of the Sponsorship Agreement, D.C. United has been damaged in an amount to be determined at trial, but not less than $850,000 as to the Sponsorship Agreement.

73. Additionally, for the reasons stated above, Vassos is personally liable for CapX's breach of the Sponsorship Agreement.

## COUNT II
### (Breach of Contract – the Suite Lease)

74. D.C. United repeats and realleges the allegations set forth above as if fully set forth herein.

75. The Suite Lease is a valid and binding contract.

76. D.C. United at all times performed its obligations under the Suite Lease.

77. CapX breached the Suite Lease by not paying the amounts owed under the Suite Lease, totaling $318,750.00. Section 14 of the Suite Lease permits D.C. United, upon CapX's default, to "declare the entire unpaid balance of the [Suite Lease]… immediately due and payable."

78. As a direct and proximate cause of CapX's breach of the Suite Lease, D.C. United has been damaged in an amount to be determined at trial, but not less than $318,750.00 on the Suite Lease.

79. Additionally, for the reasons stated above, Vassos is personally liable for CapX's breach of the Suite Lease.

## COUNT III
### (Conversion – the Office Invoices)

80. D.C. United repeats and realleges the allegations set forth above as if fully set forth herein.

81. CapX has unlawfully exercised ownership, dominion, and control over D.C. United's property, specifically the $110,183.68 paid in duplicate to CapX for the Office Invoices, in denial of D.C. United's rights to the property.

82. As a direct and proximate cause of CapX's conversion, D.C. United has been damaged in an amount to be determined at trial, but not less than $110,183.68 on the Office Invoices and Furniture Lease.

83. Additionally, for the reasons stated above, Vassos is personally liable for CapX's conversion.

**COUNT IV**
**(Negligent Misrepresentation – the Office Invoices)**

84. D.C. United repeats and realleges the allegations set forth above as if fully set forth herein.

85. Pursuant to the Furniture Lease, DC Stadium paid Invoice ##1348 and 1349 with the November Draw.

86. Despite having been paid by DC Stadium on Invoices ##1348 and 1349, CapX harassed D.C. United for payment on the invoices, insisting that they had not been paid in multiple emails and telephone calls.

87. Additionally, despite the fact that Invoices ## 1393 and 1994 had previously been paid through a construction loan draw, DC Stadium paid for them a second time on December 17, 2018, because of CapX's harassing emails and telephone calls.

88. These representations to D.C. United were incorrect and constitute false statements and/or omissions by CapX that CapX had a duty to disclose to D.C. United with respect to an issue material to the bargain struck between the parties, *i.e.*, payment the delivery and installation of office furniture pursuant to the Furniture Lease.

89. D.C. United reasonably relied on CapX's statements that CapX had not received payment on Invoice ##1348 and 1349.

90. Because of CapX's representations, D.C. United was forced to make duplicate payments on Invoice ##1348 and 1349.

91. As a direct and proximate cause of CapX's negligent misrepresentations, D.C. United has been damaged in an amount to be determined at trial, but not less than $110,183.68 on

15

the Office Invoices and Furniture Lease.

92. Additionally, for the reasons stated above, Vassos is personally liable for CapX's negligent misrepresentation.

## COUNT V
### (Conversion – the Copier Leases)

93. D.C. United repeats and realleges the allegations set forth above as if fully set forth herein.

94. CapX has unlawfully exercised ownership, dominion, and control over D.C. United's property, specifically the $58,188 paid in duplicate to CapX for the Copier Leases, in denial of D.C. United's rights to the property.

95. As a direct and proximate cause of CapX's conversion, D.C. United has been damaged in an amount to be determined at trial, but not less than $58,188 on the Copier Leases.

96. Additionally, for the reasons stated above, Vassos is personally liable for CapX's conversion.

## COUNT VI
### (Negligent Misrepresentation – the Copier Lease)

97. D.C. United repeats and realleges the allegations set forth above as if fully set forth herein.

98. The parties' intent in entering into the Second Copier Lease was for the amount CapX spent with D.C. United would roughly equal the amount D.C. United spent with CapX. CapX represented to D.C. United that the amounts paid to Marlin under the Second Copier Lease would benefit CapX.

99. CapX also represented to D.C. United that the Second Copier lease superseded the First Copier Lease.

100. These representations to D.C. United were incorrect and constitute false statements and/or omissions by CapX that CapX had a duty to disclose to D.C. United with respect to an issue material to the bargain struck between the parties, i.e., payment for the copier lease.

101. D.C. United reasonably relied on CapX's statements that the Second Copier Lease superseded the First Copier Lease.

102. Because of CapX's representations, D.C. United was forced to make payments on both the First Copier Lease (to Noreast) and the Second Copier Lease (to Marlin), for the same five copiers, between July 2018 and June 2019.

103. As a direct and proximate cause of CapX's negligent misrepresentations, D.C. United has been damaged in an amount to be determined at trial, but not less than $58,188 on the Copier Leases.

104. Additionally, for the reasons stated above, Vassos is personally liable for CapX's negligent misrepresentation.

## REQUEST FOR RELIEF

105. D.C. United respectfully requests that the Court enter judgment in its favor, granting the following relief:

    a. Damages in an amount to be determined at trial;

    b. Attorney's fees;

    c. Costs;

    d. Pre-judgment and post-judgment interest; and,

    e. Such other and further relief as the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of any issue so triable as of right pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: October 22, 2019
Washington, DC

s/ Jackson D. Toof
Jackson D. Toof, Esq. (DC Bar No. 5455332)
Emily Baver Slavin, Esq. (DC Bar No. 1014510)
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, D.C.  20006
Tel:     (202) 857-6000
Fax:     (202) 857-6395
Email:  jackson.toof@arentfox.com
             emily.slavin@arentfox.com